IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RONALD C. PRATI and | § | |
| MARY G. PRATI | § | |
| Plaintiffs, | § | |
| | § | DOCKET NO. 02-60T |
| | § | |
| vs. | § | Judge Block |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Defendant. | § | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO STAY OR, IN THE ALTERNATIVE, FOR CONSOLIDATION OF APPEAL**

Thomas E. Redding
Sallie W. Gladney
Teresa J. Womack
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)
ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

1. The Court Should Reconsider and Reverse its Holding That This Court Lacks Jurisdiction Over the Plaintiffs' §6229(a) Limitations Claim . . . . . . . . . . . . . . . -2-

a. The Court Should Correct Statements That Are Wrong as a Matter of Law . . . -3-

i. Section 6226(f) as Referenced Does Not Apply to Tax Year 1985 . . . . -3-

ii. The Court Failed to Address §6226(d)(1)(B) in Effect for 1985 . . . . . . -4-

iii. For 1985, Form 870-P(AD) Partnership Item Settlements Must Be Comprehensive as a Matter of Law . . . . . . . . . . . . . . . . . . . . -6-

b. The Court Should Correct Statements That Are Clearly Erroneous in Fact . . -11-

2. The Court Should Reconsider and Reverse its Holding That It Lacks Jurisdiction Over the Plaintiffs' §6621(c) Claim . . . . . . . . . . . . . . . . . . . . . . -13-

a. The *Prati* Opinion Ignores Judge Lettow's Recent Rulings . . . . . . . . . . . . . . -13-

b. The *Prati* Opinion Reads §7422(h) Too Broadly . . . . . . . . . . . . . . . . . . . . . -14-

c. The Partnership-Level Tax Court Decisions Do Not Establish a TMT Ground for the Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . -17-

d. The Forms 870-P(AD) Settled All Partnership Item Components of §6621(c) -20-

3. In the Alternative, the AMCOR Partners Request that Their 77 Cases Be Either Stayed Or Consolidated for Appeal . . . . . . . . . . . . . . . . . -21-

## TABLE OF AUTHORITIES

### Cases

*Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Alexander v. U.S.,* 44 F.3d 328 (5th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -16-

*Barlow v. C.I.R.*, 2000 WL 1649506 (T.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Barlow v. C.I.R.,* 301 F.3d 714 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Bartimmo v. U.S.*, 525 F.Supp.2d 879 (S.D.Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Brookstone v. U.S.*, 1994 WL 621576 (S.D.Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Columbia Bldg., Ltd. v. C.I.R.,* 98 T.C. 607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -6-

*Copeland v. U.S.*, 290 F.3d 326 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-, -19-

*d'Abrera v. U.S.*, 78 Fed.Cl. 51 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Ertz v. C.I.R.*, T.C. Memo. 2007-15, n.15, 2007 WL 174133 . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Field v. U.S.*, 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14--16-

*Fifth Third Bank of W. Ohio v. U.S.,* 52 Fed.Cl. 637 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Gingerich v. U.S.*, 18 Fed.Cl. 164 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Gingerich v. U.S.*, 82 Fed.Appx. 35 (Fed.Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Grapevine Imports, Ltd. v. U.S.*, 71 Fed.Cl. 324, 336 fn 19, 338 fn 22 (2006) . . . . . . . . . . . . . -5-

*Greenberg Bros. Partnership # 4 v. C.I.R.*, 111 T.C. 198 (1998),
*aff'd sub non Cinema '84 v. CI.R.*, 294 F.3d 432 (2nd Cir., 2002) . . . . . . . . . . . . . . . -8--10-

*Int'l Air Response, Inc. v. U.S.*, --- Fed.Cl. ----, 2008 WL 920392, *1 (April 2, 2008) . . . . . . . -2-

*Keener v. U.S.*, 76 Fed.Cl. 455 (2007) . . . . . . . . . . -2-, -4--8-, -10-, -13-, -14-, -16--18-, -20--23-

*Klein v. U.S.,* 86 F.Supp.2d 690 (E.D.Mich.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*McGann v. U.S.*, 76 Fed.Cl. 745 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -14-

*McGann v. U.S.*, — Fed.Cl. — (April 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . -13-, -14-, -17-

*Mellina v. U.S.*, 518 F.Supp.2d 825 (N.D.Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -16-

*Monti v. U.S.*, 223 F.3d 6 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*N.C.F. Energy Partners v. C.I.R.*, 89 T.C. 741 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Olson v. U.S.*, 37 Fed.Cl. 727 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -7-

*Prati v. U.S.*, --- Fed.Cl. ----, 2008 WL 1777380 . . . . . . . . . . . . . -1--3-, -6-, -12--14-, -18-, -21-

*Prochorenko v. U.S.*, 243 F.3d 1359 (Fed.Cir., 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Rhone-Poulenc Surfactants and Specialties, L.P. v. C.I.R.*,
114 T.C. 533 (2000) . . . . . . . . . . -3-, -5-, -6-

*River City Ranches # 1 Ltd. v. C.I.R.,* 401 F.3d 1136 (9th Cir.2005) . . . . . . . . -14-, -16-

*Treaty Pines Inv. Partnership v. C.I.R.,* 967 F.2d 206 (5th Cir.1992) . . . . . . . . -7-

*Weiner v. U.S.*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . -17-

**Statutes**

26 U.S.C. §183 . . . . . . . . . . -19-

26 U.S.C. §6224(c) . . . . . . . . . . -8--12-, -15-, -17-, -20-

26 U.S.C. §6225(a) . . . . . . . . . . -17-

26 U.S.C. §6226(a) . . . . . . . . . . -3-, -17-

26 U.S.C. §6226(c) . . . . . . . . . . -4-, -5-

26 U.S.C. §6226(d) . . . . . . . . . . -4--6-

26 U.S.C. §6226(d)(1)(B) . . . . . . . . . . -4--6-

26 U.S.C. §6226(f) . . . . . . . . . . -2-, -3-, -17-

26 U.S.C. §6229(a) . . . . . . . . . . -2-, -21-

26 U.S.C. §6230(c)(2)(A) . . . . . . . . . . -15-

26 U.S.C. §6231(b)(1) . . . . . . . . . . -6-

26 U.S.C. §6231(b)(1)(A) . . . . . . . . . . -6-

26 U.S.C. §6231(b)(1)(C) . . . . . . . . . . -6-, -17-

26 U.S.C. §6231(b)(2)(B)(i) . . . . . . . . . . -7-

26 U.S.C. §6621(c) . . . . . . . . . . *passim*

26 U.S.C. §6621(c)(3)(A)(iv) . . . . . . . . . . -18-, -19-

26 U.S.C. §6621(c)(3)(A)(iv) . . . . . . . . . . -18-, -19-

26 U.S.C. §6621(c)(3)(A)(v) . . . . . . . . . . -18-

26 U.S.C. §7121 . . . . . . . . . . -10-

26 U.S.C. §7422(h) . . . . . . . . . . -2-, -6-, -7-, -14--17-

Taxpayer Relief Act of 1997 (TRA 1997), Pub.L. 105-34, sec. 1238(b)(1), 111 Stat. 1026. . . -3-

Taxpayer Relief Act of 1997 (TRA 1997), Pub.L. 105-34, sec. 1239(b), 111 Stat. 1027-1028 -5-

Taxpayer Relief Act of 1997 (TRA 1997), Pub.L. 105-34, sec. 1238(c), 111 Stat. 1027 . . . . . -3-

**Regulations**

Temp.Treas.Reg. §301.6224(c)-3(a)T . . . . . . . . -8--10-

Temp.Treas.Reg. §301.6224(c)-3T(b) . . . . . . . . -9-, -10-

Treas.Reg. §301.6224(c)-3 . . . . . . . . -10-

Treas.Reg. §301.6621-2T, A-3.(9) . . . . . . . . -19-

Treas.Reg. §301.6621-2T, A-5 . . . . . . . . -17-

**Other Authorities**

64 FR 3837-01, 1999-1 C.B. 682, 1999 WL 33562464 (1/26/99) . . . . . . . . -9-

66 FR 50541-1, 50552-3, 2001-2 C.B. 344, 2001 WL 34028604 (10/04/01) . . . . . . . . -10-

FRAP 4(a) . . . . . . . . -1-, -23-

IRS Litigation Bulletin No. 41, IRS LB 41, 1988 WL 897689 (IRS LB) (12/88) . . . . . . . . -10-

IRS Non Docketed Service Advice Review,
2002 WL 32167989 (IRS NSAR), 2002 IRS NSAR 20,301 (8/13/02) . . . . . . . . -11-

Litigation Guideline Memorandum,
1990 WL 1086188 (IRS LGM), 1990 LGM TL-87 (6/04/90) . . . . . . . . -9-, -10-

RCFC 42(a) . . . . . . . . -22-

**PLAINTIFFS' MOTION FOR RECONSIDERATION OR,
IN THE ALTERNATIVE, TO STAY OR,
IN THE ALTERNATIVE, FOR CONSOLIDATION OF APPEAL**

On April 16, 2008, the Court issued its Opinion and Order at *Prati v. U.S.*, --- Fed.Cl. ----, 2008 WL 1777380. *See* Document 87. That opinion is applicable both to the case at bar and 76 other related cases.[1] Judgments were entered in all 77 cases on April 18, 2008. *See* Document No. 88. The plaintiffs request that this motion be deemed as also filed in each of the 77 listed cases sufficient for all purposes, including tolling, until the date this motion is resolved, the FRAP 4(a) period for filing appeals in all 77 cases.

Plaintiffs also request that the Court reconsider its opinion in light of the issues addressed below and reverse its determination that the Court lacks jurisdiction in these cases to address the taxpayer-plaintiffs' claims for refund based on the statute of limitations and, in the alternative, for tax motivated interest imposed under former 26 U.S.C. §6621(c). RCFC 59.

---

[1] The other 76 cases are: Acker, Nadine (07-215); Adams, Samuel (07-162); Arumugam, Velusami (02-1395); Aylward, Thomas (06-593); Baer, Maurice (06-857); Barry, Ira (03-200); Belair, Laurence (07-588); Berman, Robert (06-856); Boland, John (06-859); Brady, Robert (07-315); Caldwell, Bruce (07-548); Cannon, Nassif Jr. (02-61); Casamento, Stephen (06-698); Chapman, Bill (05-1225); Clinton, Tommy (04-116); Connell, Thomas (07-62); Corkill, Glen (07-147); Cox, Dean (04-709); Crocker, Jesse (04-903); Crouse, Betty (07-894); Davidson, Arthur (07-196); Davis, Charles (06-624); Davis, Robert (06-697); Davison, Robert (04-1112); Deegan, Edward (06-594); Dhillon, Charanjit (02-1477); Dvoranchik, William (07-231); Donaldson, Robert (03-2875); Dow, Ruth (06-746); Dykstra, Donald (07-309); Ehrenbard, Robert (03-1559); Fazio, Anthony (07-163); Feldman, Merrill (07-224); Fillmore Equipment (07-341); Fournier, E. Haffner (06-933); Gilbertson, Robert (05-934); Goldman, Elise (04-123); Gregory, Jane (06-578); Hackett, James III (05-758); Hastie, J. Drayton (04-291); Hatton, Richard (04-127); Huguera, Teodoro (07-381); Iannacchino, Michael (06-817); Johnson, Richard (03-2339); Johnson, Stanley (04-908); Jones, Palmer (03-2229); Jones, Thomas Jr. (02-1079); Keefe, Joseph (07-893); Key, Scott (06-293); Lloyd, James (06-623); Ludwig, Gordon (02-1730); Lyons, Edward Jr. (06-391); Lynn, Nancy (07-564); Marshall, Larry (02-474); Martin, Robert (03-2272); Miller, Edward (05-508); Mitchell, Lewis (07-587); Montgomery, William (03-2273); Moody, Robert (06-752); Morris, John (07-405); Northcutt, Merline (06-860); Oehlschlager, Keith (05-1144); Oldshue, Jerry (06-696); Prati, Ronald (02-60); Sadd, William (05-25); Schuler, John (02-432); Sperling, Stanley (02-1523); Strauss, Joseph (06-823); Tanner, Larry (04-1066); Thompson, Richard (06-792); Ungs, Jerome (06-137); Vallari, Stephen (06-761); Vigliotta, John (02-13); Voda, Jan (06-818); Whitaker, Lloyd (02-795); Winternitz, William (01-404); Wyckoff, E. Lisk Jr. (02-772).

Should the Court determine not to alter its prior opinion and order, then the plaintiffs request, in the alternative, that all 77 judgments be vacated and either: (i) all 77 cases be stayed pending resolution by the Federal Circuit of the jurisdictional issues in *Keener v. U.S.*, 76 Fed.Cl. 455 (2007), currently before the Federal Circuit at docket no. 2008-5004, or (ii) the other 76 cases[2] be consolidated under the case at bar, the judgments then re-entered, and the cases proceed as a single appeal.

**1. <u>The Court Should Reconsider and Reverse its Holding That This Court Lacks Jurisdiction Over the Plaintiffs' §6229(a) Limitations Claim</u>**

Motions for reconsideration are "welcome[d]"[3] by the Court as:

> an important part of the judicial process and enable a trial court to afford the parties a written decision that addresses all the facts and law that they bring to bear before either party is required to assess whether the trial court's judgment is subject to appeal as incorrect as a matter of law, [or] as clearly erroneous as a matter of fact, … .

*Int'l Air Response, Inc. v. U.S.*, --- Fed.Cl. ----, 2008 WL 920392, *1 (April 2, 2008).

---

2 Minus any cases where the *Prati* opinion cannot resolve all remaining issues. If upheld, the *Prati* and *Keener* opinions would resolve the §6229(a) limitations and §6621(c) penalty interest issues in all 77 cases and, thereby, resolve all remaining issues in most, but not all, of those cases. In a few of the listed cases the judgments were entered in error because additional issues remain that cannot be resolved by the *Keener* or *Prati* opinions. For example, Belair, Laurence (07-1395) also asserted in his complaint that the assessments against him were invalid because they were made after the §6226(f)(1) assessment period expired. Boland, John (06-859) asserted in his complaint that some of the assessments against him were invalid because they were made in the wrong tax year. Also, as discussed below, Cannon, Nassif Jr. (02-61) and Wyckoff, E. Lisk Jr. (02-772) have individual facts that under the *Keener* and *Prati* analysis create a *res judicata* bar to any assertion by the government that their Forms 870-P(AD) did not settle all of their partnership items, convert them to nonpartnership items, and thereby lifting any §7422(h) bar to this Court's jurisdiction over both their limitations and §6621(c) claims. These bases for refund for these four partners are nonpartnership items and cannot be resolved by the *Keener* and *Prati* opinions; therefore, judgments in their cases were entered in error and should be vacated. Plaintiffs' counsel is reviewing all 77 cases to determine those in which a motion to vacate the judgment on individual grounds is appropriate.

3 *Fifth Third Bank of W. Ohio v. U.S.,* 52 Fed.Cl. 637, 638 (2002) ("The court welcomes motions for reconsideration or clarification in the endeavor to correct errors within the least amount of time and at the least effort to the parties and their counsel.").

**a. The Court Should Correct Statements That Are Wrong as a Matter of Law**

TEFRA is indeed "distressingly complex and confusing."[4] The plaintiffs request that this Court correct certain statements in its *Prati* opinion that are incorrect as a matter of law so that it does not contribute to the confusion already existing as to TEFRA.

i. Section 6226(f) as Referenced Does Not Apply to Tax Year 1985

On page 9, the Court states:

> The court before which a petition for readjustment is brought has jurisdiction to "determine all partnership items of the partnership for the partnership taxable year." 26 U.S.C. §6226(f). This jurisdiction includes the power to make the "proper allocation of [partnership items] among the partners, and [to determine] the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." *Id.*

This statement is incorrect as a matter of law. For tax year 1985, §6226(f) expressly limits a court's jurisdiction in §6226(a) partnership-level cases to "determin[ing] all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates and the proper allocation of such items among the partners." The Taxpayer Relief Act of 1997[5] amended §6226(f) expanding that jurisdiction to include "the applicability of any penalty, addition to tax, or additional amount" related to the adjustment of a partnership item. But that amendment applies only to tax years ending after Aug. 5, 1997 and not to 1985.[6] Therefore, to properly reflect the law applicable to this case the *Prati* opinion should be revised to delete the phrase "'and [to determine] the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to

---

4 *Prati* at 6, *quoting Rhone-Poulenc Surfactants and Specialties, L.P. v. C.I.R.*, 114 T.C. 533, 540 (2000). References to pages in the *Prati* opinion are to the pages as reflected in Document No. 87 in the record of this case.

5 Taxpayer Relief Act of 1997 (TRA 1997), Pub.L. 105-34, sec. 1238(b)(1), 111 Stat. 1026.

6 TRA 1997 sec. 1238(c), 111 Stat. 1027. *See also Ertz v. C.I.R.*, T.C. Memo. 2007-15, n.15, 2007 WL 174133, *15.

a partnership item.'"

ii. <u>The Court Failed to Address §6226(d)(1)(B) in Effect for 1985</u>

On page 13, the Court states:

> Accordingly, partners must first raise any partnership item that "affects" their personal items at the unified partnership-level proceeding. … In other words, partners "must first raise any partnership item that 'affects' their personal items at the partnership-level proceeding" and "obtain resolution of the partnership prong of their affected items before later turning to the affected nonpartnership prong." *Id.* at 461.This the Pratis did not do. /FN20/
>
> FN20 And, as the *Keener* court points out, it is worth repeating that even if the TMP fails to raise the issue, "section 6226(c) of the Code entitles a partner to participate fully as a party in the partnership proceeding, presumably allowing such a partner to raise [such] issues." *Id.* (citing *Clark v. U.S.,* 68 F.Supp.2d at 1345-46 (discussing this provision)).

Similarly, on page 17, the Court states:

> Finally, this Court agrees with the court in *Keener* that, like the plaintiffs in that case, plaintiffs here have waived their limitations objection. Because they could have pursued their limitations defense in the earlier partnership-level proceeding, but chose not to do so, "the jurisprudence of both the Tax Court and this Court suggest that the limitations argument they now raise is not jurisdictional, but rather was an affirmative defense that, by their actions, was waived."

These statements are incorrect as a matter of law. Section §6226(c) provides that in a TEFRA partnership-level case "each person who was a partner in such partnership at any time during such year shall be treated as a party to such action," and "the court having jurisdiction of such action shall allow each such person to participate in the action." §6226(c)(1) and (2). But this Court, like the *Keener* court, failed to address the express restrictions placed on §6226(c) by §6226(d). For tax year 1985, §6226(d) plainly states:

> (d) PARTNER MUST HAVE INTEREST IN OUTCOME.—
>
> (1) IN ORDER TO BE PARTY TO ACTION.—Subsection [6226](c) shall not apply to a partner after the day on which—
>
> (A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231 [*e.g.*

settlement], or

(B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.

(2) TO FILE PETITION.—No partner may file a readjustment petition under subsection [6226](b) unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding.

In 1997 Congress amended §6226(d) to allow partners to raise their limitations defense to assessment in a partnership-level case but *only* for partnership years ending after Aug. 5, 1997.[7] Congress could easily have applied this amendment to all tax years but instead expressly limited it to only tax years long after 1985. Both this Court and the *Keener* court fail to address how the partners could have validly raised their limitations defenses to assessment in the partnership-level case here (for 1985) or in *Keener* (for 1984 and 1985), or how they could have waived those defenses by failing to raise them, when they were barred by statute – §6226(d)(1)(B) – from participating in 1984 and 1985 partnership-level cases.[8]

Plaintiffs do not deny that the Tax Court has, on at least one occassion, expanded its jurisdiction *sua sponte* by ignoring Congress's express prohibition in pre-amendment §6226(d)(1)(B)[9] even as it acknowledged the effect of the 1997 amendment.[10] The only authority

---

7 The Taxpayer Relief Act of 1997(TRA), Pub.L. 105-34, sec. 1239(b), 111 Stat. 1027-1028.

8 *Grapevine Imports, Ltd. v. U.S.*, 71 Fed.Cl. 324, 336 fn 19, 338 fn 22 (2006) (Post-amendment §6226(d)(1)(B) applied to tax years 1998, 1999, and 2000.);

9 *Rhone-Poulenc* at 535 ("Generally, in order to be a party to a partnership action, a partner must have an interest in the outcome. If the statute of limitations applicable to a partner bars the assessment of tax attributable to the partnership items in issue, that partner would generally not have an interest in the outcome. See sec. 6226(c) and (d). However, we have held that a partner may participate in such action for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired and that we have jurisdiction to decide whether that assertion is correct. See *Columbia Bldg., Ltd. v. C.I.R.,* 98 T.C. 607, 1992 WL 101165 (1992). Respondent does not dispute our jurisdiction over this issue." Footnotes omitted.).

10 *Rhone-Poulenc* at 546. ("We note that in 1997 Congress amended sec. 6226(d) in order to specifically provide that a partner may raise the statute of limitations defense in a partnership

for disregarding the express language of pre-amendment §6226(d)(1)(B) relied on by the Tax Court in *Rhone-Poulenc* was its opinion in *Columbia Bldg.* But *Columbia Bldg.* never addressed §6226(d)(1)(B). In *Columbia Bldg.* all parties agreed that the assessment period expired before the FPAA was issued for tax year 1984.[11] The partners wanted a formal determination by the Tax Court. The IRS asserted that the FPAA sent to a bankrupt former tax matters partner ("TMP") was not sufficient to grant the Tax Court jurisdiction in a partnership-level case. The Tax Court held that the FPAA was sufficient and granted the partners their determination. Section 6226(d)(1)(B) was never addressed by the Tax Court and, apparently, never raised by the parties.

The plain, unambiguous language of pre-amendment §6226(d)(1)(B) and the decision of Congress not to make the 1997 amendment applicable to all tax years has never been addressed by any appellate court. Therefore, the *Prati* opinion should be reconsidered and amended to apply §6226(d) as applicable to tax year 1985.

iii. <u>For 1985, Form 870-P(AD) Partnership Item Settlements Must Be Comprehensive as a Matter of Law</u>

On page 17-18 the Court states

> It is true that §6231(b)(1)(C) of the Code does convert partnership items into nonpartnership items when "the Secretary enters into a settlement agreement with the partner with respect to such items," and thus items previously treated as partnership items can become "individualized," rendering §7422(h) inapplicable. *See Keener,* 76 Fed.Cl. at 464; *Slovacek,* 40 Fed.Cl. at 829-30; *Olson,* 37 Fed.Cl. at 733. But the only items converted fall under the term "with respect to such items," that is, "such items" actually settled by an agreement. /FN23/ The limitations contention, not being part of any settlement agreement, is thus not converted into a nonpartnership item.
>
> FN23. The view that "such items" refers only to those items actually covered by an agreement is fortified by *Keener's* construction of several other subparagraphs in §6231(b)(1), such as §6231(b)(1)(A), which provides that "partnership items shall become nonpartnership items

---

proceeding for partnership years ending after Aug. 5, 1997.")

11 *Columbia Bldg.* at 611.

> as of the date the Secretary mails to such partner a notice that 'such items' shall be treated as nonpartnership items," *Keener,* 76 Fed.Cl. at 464, and §6231(b)(2)(B)(i), which states that this notice may be provided "as to one or more of such [partnership] items" the connotation being that "less than all the available partnership items need be converted." *Id.* Construing these subparagraphs in a coherent and consistent manner, *see, e.g., Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 88-89, 55 S.Ct. 50, 79 L.Ed. 211 (1934); *Fortec Constr. v. U.S.,* 760 F.2d 1288, 1292 (Fed.Cir.1985), the court rightly maintained that the meaning of "such items" can refer only to those items actually settled or agreed upon. *Keener,* 76 Fed.Cl. at 464-65.

But on this issue *Keener* was wrong as a matter of law and clearly erroneous on the facts.

This Court correctly recognized that when a partner settles his partnership items they convert to nonpartnership items and §7422(h) will not bar a subsequent refund claim based on those nonpartnership items.[12] In a case substantively similar to the case at bar, the Northern District of Texas recently recognized that on settlement the partnership item components of a §6621(c) penalty interest refund claim were converted to nonpartnership items and §7422(h) no longer barred review of that claim.[13] The government voluntarily dismissed that appeal.[14]

As a matter of law the Pratis' Forms 870-P(AD) converted all of their partnership items to nonpartnership items., not just those expressly listed on the schedule of adjustments attached to the Forms 870-P(AD). Therefore, if any element of the Pratis' limitations defense was a partnership item it was converted to a nonpartnership item on settlement and §7422(h) cannot bar their limitations defense in this case.

The Pratis' Forms 870-P(AD) were part of the initial round of AMCOR settlements categorized as "original" settlements because they were not procured as "consistent settlements"

---

[12] *See also Olson v. U.S.*, 37 Fed.Cl. 727, 733-734 (1997), *citing Alexander v. U.S.,* 44 F.3d 328, 331 (5th Cir.1995) and *Treaty Pines Inv. Partnership v. C.I.R.,* 967 F.2d 206, 210 (5th Cir.1992).

[13] *Mellina v. U.S.*, 518 F.Supp.2d 825, 829 (N.D.Tex. 2007).

[14] See Fifth Circuit Docket No. 07-11302.

under §6224(c). See pages B95-B110 of Document 75. After the "original" Form 870-P(AD) settlements were countersigned, the IRS solicited substantively identical Form 870-P(AD) "Consistent Agreements" from the remaining partners in each partnership, including the partnerships at issue here and in the other 76 cases. See pages B111-B187 of Document 75.

All IRS promulgated Forms 870-P(AD) state that "[u]nder the provision of §6224(c)" the partner offers to settle "with respect to the determination of partnership items of the partnership for the year shown on the schedule of adjustments." See pages B95-B135, B207-208 of Document 75.

The common law of contracts generally governs tax settlements.[15] But §6224(c) "original" and "consistent" settlements are also governed by statute and regulation, particularly their partnership item scope and whether the IRS must make a "Consistent Agreement" with other partners.

"Original" settlements "will be binding on all parties to such agreement with respect to partnership items for such partnership taxable year," except as otherwise provided therein. §6224(c)(1). If the IRS enters into an "original" settlement as to partnership items then other partners have a right to a "Consistent Agreement" on "terms for the partnership taxable year which are consistent with those contained in such [original] agreement." §6224(c)(2).

For 1985, Temp.Treas.Reg. §301.6224(c)-3(a)T provides that §6224(c) settlements such as these "shall be comprehensive, that is, a settlement may not be limited to selected items."[16]

Aside from *Keener*, only one case has addressed the "comprehensive" requirement of §6224(c).[17] In *Greenberg*, the *government* asserted and the Tax Court held that because partnership

---

15 *See Gingerich v. U.S.*, 82 Fed.Appx. 35 (Fed.Cir. 2003) (No. 03-5027).

16 52 FR 6779-01,6787-8,1987-1 C.B. 325,1987 WL 860309 (3/05/87).

17 *Greenberg Bros. Partnership # 4 v. C.I.R.*, 111 T.C. 198 (1998), *aff'd sub non Cinema '84 v. CI.R.*, 294 F.3d 432 (2nd Cir., 2002).

item terms must be consistent between "original" and "consistent" settlements, the "comprehensive" language in the regulation applies to both consistent settlements and the original settlements for which partners may request consistent settlement and must comprehensively settle ***all*** partnership items for the tax year.[18] The Second Circuit affirmed this interpretation was reasonable.[19]

*Greenberg* is consistent with the IRS's official litigating position at the time of these settlements. In 1990, the IRS instructed its litigating personnel that Temp.Treas.Reg. §301.6224(c)-3(b)T requires all §6224(c) settlements to comprehensively settle all partnership items for the tax year and "if a settlement agreement leaves any items to be litigated either at the time it is executed or at the time a request for consistent terms is made, it is our position that the agreement will not be subject to consistent settlement."[20]

Temp.Treas.Reg. §301.6224(c)-3(b)T was amended effective 1999 to reflect the decision in *Greenberg* and the IRS's litigating position – "[c]onsistent agreements must be identical to the original settlement, that is, the settlement upon which the offered settlement terms are based. A consistent agreement must mirror the original settlement and may not be limited to selected items from the original settlement."[21]

The 1999 amendments to the regulation did not alter Temp.Treas.Reg. §301.6224(c)-3(a)T. All §6224(c) settlements, including the settlements in all 77 relevant cases here, are still required to be comprehensive.

---

18 *Greenberg* at 206.

19 *Cinema '84* at 439.

20 Litigation Guideline Memorandum, 1990 WL 1086188 (IRS LGM), 1990 LGM TL-87 (6/04/90). Though not precedent, this is persuasive indicia that the IRS knows its promulgated TEFRA settlement forms are comprehensive for the years at issue.

21 64 FR 3837-01, 1999-1 C.B. 682, 1999 WL 33562464 (1/26/99).

*Keener* is based on the erroneous determination that other statutory and regulatory amendments addressing limitations periods for partial settlements, proposed in 1992 and enacted in 1999, suggested that the AMCOR partners' §6224(c) settlements were partial. *Keener* erred in extrapolating the application of those amendments to the AMCOR partners' §6224(c) settlements.

Sections 6224(c) and 7121 are separate grants authorizing the IRS to settle tax disputes. Partnership items may be settled on:

- Forms 870-P(AD), under §6224(c), [See pages B207-208 of Document 75]
- Forms 870-L(AD), under §§6224(c) and 7121, [See pages B209-211 of Document 75] or
- Form 906 Closing Agreements, under §7121 and, maybe, §6224(c).[22] [See pages B212-214 of Document 75]

At the time of these settlements, the IRS recognized the difference between §6224(c) settlements, which must be comprehensive, and other settlements that can be partial but should be used cautiously due to uncertainty respecting the assessment periods.[23]

Effective after October 4, 2001, Temp.Treas.Reg. §301.6224(c)-3(b)T was removed and replaced with Treas.Reg. §301.6224(c)-3.[24] That regulation, not applicable here, kept the "mirror" image language from the 1999 amendments but rewrote Temp.Treas.Reg. §301.6224(c)-3(a)T to provide that settlements may be "comprehensive or partial, …."

---

22 Closing agreements were used in *Greenberg*, but stated they were settlements under §6224(c). Closing Agreements can partially settle partnership items, but only if it is *not* a §6224(c) settlement. *See e.g.*, IRS Litigation Bulletin No. 41, IRS LB 41, 1988 WL 897689 (IRS LB) (12/88) (not precedent but persuasive indicia the IRS viewed TEFRA settlements as the Pratis and other AMCOR partners did).

23 1990 WL 1086188 fn.2, 1990 LGM TL-87 (6/04/90), *supra*.

24 66 FR 50541-1, 50552-3, 2001-2 C.B. 344, 2001 WL 34028604 (10/04/01).

In 2002, the IRS accepted that §6224(c) settlements can be partial.[25] Relying on (i) the 2001 regulatory amendments recognizing "comprehensive or partial" settlements, and (ii) the §6224(c)(1) parenthetical stating that a settlement is binding as to partnership item determinations for the taxable year *(except as otherwise provided in such agreement*), the IRS issued guidance for explicitly stating when §6224(c) settlements are partial – each page of the agreement must be annotated "Partial Agreement" and the agreement must include a paragraph stating it is a partial settlement and the assessment period has not started to run.

In summary, for 1984 and 1985, §6224(c) settlements are comprehensive as a matter of law. After 2001, §6224(c) settlements can be partial, but only if the agreement explicitly says so. The Forms 870-P(AD) at issue in these 77 cases did not. See pages B95-B187 of Document 75.

**b. The Court Should Correct Statements That Are Clearly Erroneous in Fact**

Although the Pratis' §6224(c) settlements comprehensively settled all their partnership items as a matter of law, the facts also show they were comprehensive.

The Pratis' Forms 870-P(AD) contain only the standard, comprehensive settlement language: "offers to enter into a settlement agreement *with respect to the determination of partnership items of the partnership for the year* shown on the attached schedule of adjustments."See pages B95-B110 of Document 75. Emphasis added.

The IRS told the AMCOR partners that by settling they would "avoid further litigation and penalties." See pages B141 of Document 75.

Assuming, *arguendo*, that Form 870-P(AD) §6224(c) settlements can be partial, any partnership items not settled by the partners' Forms 870-P(AD) remained subject to the partnership-

---

[25] IRS Non Docketed Service Advice Review, 2002 WL 32167989 (IRS NSAR), 2002 IRS NSAR 20,301 (8/13/02). Though not precedent, this is persuasive indicia that the IRS knows its promulgated TEFRA settlement forms are comprehensive unless additional language is included identifying them as partial.

level Tax Court cases. The Pratis settled on April 21, 1997. See pages B96, B102, and B107 of Document 75. The IRS assessed all tax and interest arising from the Pratis' AMCOR partnership items on October 20, 1997. See pages B93-B94 of Document 75. The agreed decisions were not entered in the Pratis' former partnership-level cases until April 19, 2001, over 4 years after the Pratis settled and over 3-1/2 years after the IRS assessed all related tax and interest. See pages B198-B206 of Document 75. The IRS did not treat the settlements as "partial" and wait for the Tax Court to resolve and/or make "findings" regarding either (i) the limitations issue, or (ii) any allegedly unresolved character of the partnership items as to §6621(c). Relying solely on the settlements, the IRS assessed the partnership item related tax and interest, including §6621(c) penalty interest, against the Pratis years before the agreed decisions were entered. Any determinations made in the agreed decisions in 2001 were clearly *not* the basis for the assessments of tax, interest, and §6621(c) penalty interest made in 1997.

The IRS's conduct in the partnership-level suits further proves the AMCOR partners' Forms 870-P(AD) were comprehensive and conclusive and thereby removed the settled partners from the Tax Court's jurisdiction in the partnership-level suits. The IRS filed Tax Court Rule 248(c)(1) notices in the partnership-level suits as to partners who signed Forms 870-P(AD) – including Nassif Cannon and E. Lisk Wyckoff, Jr., two of the other 76 plaintiffs affected by the *Prati* opinion at Docket Nos. 02-61 and 02-772, respectively – representing that "such partners' partnership items for the partnership taxable year …, which is the subject of this proceeding" were settled and such partners were, therefore, "no longer parties to the proceeding." See pages B167-168, B175 of Document 75. The IRS's representations were unqualified and unequivocal – settling partners were no longer parties for any reason. See pages B137-B187 of Document 75.

Moreover, both §6224(c) and the Forms 870-P(AD) state they cannot be re-opened without "a showing of fraud, malfeasance, or misrepresentation of fact," which has not been shown.

After a partner settles his partnership items, in any partner-level proceeding the converted partnership items may be examined only "to the extent" of determining their treatment under the settlement, which is what the AMCOR partners' claims sought. In a partner-level case, such as this, neither the government nor the partner is allowed to go behind the terms of the settlement to change or re-characterize the partnership items.

The Pratis continue to assert that every element of their limitations defense is, by statute, a nonpartnership item. But if, as the Court held, one or more of those elements is a partnership item then those partnership items were converted to nonpartnership items by their 1985 Form 870-P(AD) settlements. A holding that their Forms 870-P(AD) were only partial settlements of their 1985 partnership items is wrong as a matter of law and clearly erroneous in fact based on the express language of the Pratis' Forms 870-P(AD) and the IRS's contemporaneous representations to the Tax Court as to substantively similar AMCOR partners, including at least two AMCOR partners whose partner-level suits are subject to the *Prati* opinion.

**2. <u>The Court Should Reconsider and Reverse its Holding That It Lacks Jurisdiction Over the Plaintiffs' §6621(c) Claim</u>**

**a. The *Prati* Opinion Ignores Judge Lettow's Recent Rulings**

On page 21 the Court states:

> On one side, some courts have held that §6621(c) interest is an affected item and not a partnership item, but have interpreted the term "affected item" in a manner (unlike this Court) allowing jurisdiction to challenge the propriety of §6621(c) interest assessment in a partner level proceeding. . . . . On the other side of the ledger, courts (like this one) have held that challenges to §6621 interest must be made at the *partnership* level, not at the partner level.

This statement ignores Judge Lettow's recent opinions in *McGann* at Docket No 05-1189.[26] In *McGann I*, issued after *Keener*, Judge Lettow held this Court does have jurisdiction to hear a

[26] *McGann v. U.S.*, 76 Fed.Cl. 745 (2007) ("*McGann I*") and *McGann v. U.S.*, — Fed.Cl. — (April 25, 2007) ("*McGann II*") Document No. 76 in the record of case 05-1189T.

partner's TEFRA related §6621(c) refund claim. Last week, after this Court issued its opinion in *Prati*, Judge Lettow issued *McGann II*, finding in favor of the partner on the merits of his §6621(c) claim and ordering that "[t]he Clerk is directed to enter final judgment for plaintiffs for refund of the [§6621(c)] enhanced interest in the amount of $18,309.66." *McGann II* at 19.

Clearly this Court does not uniformly hold that challenges to §6621(c) penalty interest must be made at the partnership level. Plaintiffs' assert that this interpretation actually overstates the court's position in *Keener*, which was based on an erroneous determination of partnership item characterizations purportedly made in the partnership-level agreed decisions years after the settlements were entered and §6621(c) penalty interest had been assessed.

The *Prati* opinion should be reconsidered in light of Judge Lettow analysis *McGann I and II* and the Pratis' motion for summary judgment on their §6621(c) claim should be granted.

**b. The *Prati* Opinion Reads §7422(h) Too Broadly**

In *Field II*, the Second Circuit found three well-settled reasons to hold §7422(h) does not bar §6621(c) refund claims.[27] First, §6621(c) is not a Partnership item. It is (i) not required to be taken into account on the partnership's return for the partnership's taxable year, (ii) in subtitle F, not subtitle A, and (iii) not properly designated by regulation. §6231(a)(3) and (4). The legislative history to the 1997 amendment to §6221 confirms the correctness of this approach noting penalties were not previously included in the definition of "partnership item" because they are in subtitle F, not subtitle A.[28] Second, well-settled law establishes §6621(c) as a nonpartnership affected item.[29]

---

27 *Field v. U.S.*, 328 F.3d 58, 59-60 (2nd Cir. 2003) ("*Field II*") *accord Klein v. U.S.,* 86 F.Supp.2d 690, 701 (E.D.Mich.1999); *see also Barlow v. C.I.R.,* 301 F.3d 714, 721-22 (6th Cir.2002).

28 H.R.Rep.No. 105-148 at 593-4. Amendment prospective for tax years after 8/05/97.

29 *Field II* at 60, *citing Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575, 576-78 (1991); *Barlow v. C.I.R.*, 2000 WL 1649506, *47-*51 (T.C. 2000); *River City Ranches # 1 Ltd. v. C.I.R.,* 401 F.3d 1136 (9th Cir.2005); *N.C.F. Energy Partners v. C.I.R.*, 89 T.C. 741, 745-6 (1987) (government

Third, the government has consistently conceded and acknowledged §6621(c) is an affected item, not a partnership item.[30] The government has elsewhere acknowledged that §7422(h) does not bar claim relating to affected items.

In *Field II*, the Second Circuit explained that §7422(h)'s jurisdictional bar applies only if the refund is directly based on the assessment of a Partnership item.[31] In *Prochorenko*, this Court agreed, recognizing that while the claims at issue sought refund of partnership-related taxes, they were based on the right to a §6224(c) consistent settlement – an affected item, not a Partnership item – and the claim was not barred by §7422(h).[32] This Court relied on the Second Circuit's observation that "at some level of generality, most refund claims for partnership taxes can be characterized as a refund 'attributable to partnership items,'" but construing that phrase so broadly would be contrary to the system of separate treatment of partnership items and nonpartnership items established by Congress in TEFRA.[33]

*If* the claims here asserted the partnership item adjustments on the schedule of adjustments to the Forms 870-P(AD) were improperly determined, they would be barred by §7422(h). But the claims expressly "concede[] that the partnership items should, in fact, be adjusted as agreed on the

---

filed motion to dismiss for lack of jurisdiction asserting §6621(c) and other penalties were Affected items over which Tax Court lacked jurisdiction and could only be determined in partner-level proceedings after the partnership-level proceeding).

30 *Field II* at 60. *Brookstone v. U.S.*, 1994 WL 621576, *3 (S.D.Tex. 1994) (In a §6621(c) penalty interest case, "[t]he IRS acknowledge[d] that §7422(h) and 6230(c)(2)(A) do[es] not cover a refund claim relating to affected items."); *See also Gingerich v. U.S.*, 18 Fed.Cl. 164, 168-9 (2007) (*citing* Pls.' Post-Tr. Br. at 3 n. 8; Def.'s Supp. Br. at 2).

31 *Field II* at 59-60.

32 *Prochorenko v. U.S.*, 243 F.3d 1359, 1363 (Fed.Cir., 2001), *citing Monti v. U.S.*, 223 F.3d 6 (2nd Cir. 2000).

33 *Id., citing Monti*, 223 F.3d at 82.

Form 870-P(AD)." Here the Pratis' assert that the IRS improperly imposed the §6621(c) penalty interest rate, an affected item.

Except for *Keener* and the *Prati* opinion here, courts have consistently refused to dismiss claims attributable to affected items, such as §6621(c), under §7422(h).[34] Since *Keener*, every court to address this issue has denied the government's motion to dismiss on this ground.[35] The government has conceded its appeals of those denials in *Mellina* and *Bartimmo.*[36]

The distinction between a claim based on improperly imposed §6621(c) penalty interest and a claim based on challenging a component of one of the tax motivated transactions ("TMTs") that authorize imposition of §6621(c) can be summarized as:

(i) §6621(c) penalty interest "as a whole" – an affected item not barred by §7422(h);

(ii) claims challenging a partnership item component of §6621(c) – barred by §7422(h);

(iii) claims challenging nonpartnership item, partner-level components of §6621(c) – not barred by §7422(h); and

(iv) claiims challenging the interpretation of a settlement agreement or court decision as an adequate basis for imposing §6621(c) – not barred by §7422(a).

*River City* concerned whether partnership-level proceedings can be used to establish the partnership-level components of a TMT. That issue is undisputed. But this case addresses what happens if a partnership item settlement does not establish that the adjustments and assessments are

---

34 *Field II* at 59, *citing Alexander* at 331.

35 See *McGann I*, *Mellina*, and *Bartimmo v. U.S.*, 525 F.Supp.2d 879 (S.D.Tex. 2007).

36 See Fifth Circuit Docket Nos. 07-11302 and 08-20060.

attributable to a TMT, but the IRS imposes §6621(c) penalty interest anyway.

The "attributable to" claims here challenge the application of §6621(c) as a whole because the Pratis' Forms 870-P(AD) do not support §6621(c) or any component thereof. As a matter of law and fact their §6224(c) settlements comprehensively settled *all* partnership items for 1985. Because all FPAA determinations are presumed to be valid unless *re*-determined by settlement or a court of competent jurisdiction,[37] if the grounds for adjustment are not re-determined, then the "attributable to" determination is made using *all* of the grounds for disallowance in the FPAA.[38] By regulation, in making the §6621(c) penalty interest determination, adjustments are first deemed attributable to non-TMT grounds for adjustment and it is improper to cherry-pick the TMT grounds for adjustment in order to impose §6621(c).[39]

**c. The Partnership-Level Tax Court Decisions Do Not Establish a TMT Ground for the Adjustments**

The Pratis assert that the agreed decisions entered in the partnership-level cases in 2001 were irrelevant to the assessments made against them in 1997. But even if they could have miraculously applied they were insufficient to impose the §6621(c) penalty rate of interest.

Section 6621(c) penalty interest may be imposed only if the tax liability is "attributable to" one or more of the TMTs designated by statute and regulation. In *Keener*, the court re-characterized the partners' §6621(c) claims as challenges to a particular partnership-item TMT that would be barred by §7422(h) by erroneously finding that the settlements were partial and all partners were

---

37 "As a matter of law, [all of] the FPAA determinations were valid … unless readjusted by a court of competent jurisdiction or altered by settlement See 26 U.S.C. §§6225(a), 6226(a), (f), 6229(d), 6231(b)(1)(C)." Government Motion for Partial Dismissal at document 22 (emphasis in original).

38 *Weiner v. U.S.*, 389 F.3d 152, 162 (5th Cir. 2004); *McGann II* at 16-18.

39 Treas.Reg. §301.6621-2T, A-5; *McGann II* at 16-18.

subject to Tax Court decisions that allegedly re-determined that the farming expenses were adjusted as sham transactions. In *Prati* this Court did not explicitly explain how it concluded that the transactions were shams, but appears to follow *Keener's* error.

However, even the agreed decisions in the Pratis' former partnership-level suits, if they apply, do not establish a TMT basis for the adjustments. See pages B198-B199, B201-B202, and B204-205 of Document 75. They state that the adjustments are based on "lack of economic substance" and "a substantial distortion of income." See pages B199, B202, and B205 of Document 75. Each is a separate, necessary *element* of a TMT; but neither is *itself* a TMT. The Fifth Circuit has rejected a similar IRS attempt to impose §6621(c) based on the §183 TMT after borrowing the §183 factors to make a §162 determination, which is not a TMT.[40]

Here one of the agreed decisions states:

> the foregoing adjustments are attributable to the partnerships reporting of transactions, as described at I.R.C. §6621(c)(3)(A)(v), which lacked economic substance so as to result in a substantial distortion of partnership income under the partnership's cash receipts and disbursements method of accounting, as described at I.R.C. §6621(c)(3)(A)(iv);

See page B199 of Document 75. Emphasis added.

Here the other two agreed decisions state:

> the foregoing adjustments to partnership income and expenses are attributable to *transactions which lacked economic substance*, as described in former I.R.C. §6621(c)(3)(A)(v), *so as to result in a substantial distortion of income* and expense, as described in I.R.C. §6621(c)(3)(A)(iv), *when computed under the partnership's* cash receipts and disbursement *method of accounting*.

See pages B202 and B205 of Document 75. Emphasis added.

*Keener* relied only on the above-underlined cross-references to §6621(c)(3)(A)(v) (sham) and §6621(c)(3)(A)(iv) (substantial distortion of income), thereby rendering meaningless the terms

---

40 *Copeland v. U.S.*, 290 F.3d 326, 338 (5th Cir. 2002).

in italics. Neither "lack of economic substance" alone nor "resulting in a substantial distortion of income" is a TMT. *Copeland* makes clear that disallowing an item under one provision using a definition from another (there §183) is not a disallowance under the second provision.

Under §6621(c)(3)(A)(iv) "any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period" is a TMT.

Neither the FPAAs nor agreed decisions made any determination that a prohibited use of an accounting method caused the substantial distortion of income.

Using *a part* of the "substantial distortion of income" language from §6621(c)(3)(A)(iv) did not satisfy the definition of that TMT, which further requires that the substantial distortion of income *result from* the "use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income." The agreed decisions recite that the distortion of income *results from* "the lack of economic substance" of certain transactions, *not* use of a prohibited accounting method.

The IRS's regulations also limit that TMT to use of the prohibited accounting method by the "taxpayer".[41] The *partners* are the taxpayers here, not the partnerships. A partnership and its partners each determine their individual accounting methods.[42] The agreed decisions disallow only transactions that distorted income when computed under "the partnership's … accounting method" – not a TMT under Treas.Reg. §301.6621-2T, A-3.(9).

Furthermore, Treas.Reg. §301.6621-2T, A-3.(9) is invalid and not authorized by the statute because it does not "prescribe" any accounting method use which "may result in a substantial

---

41 Treas.Reg. §301.6621-2T, A-3.(9). Emphasis added.

42 The partners' accounting methods are nonpartnership items over which the Tax Court has no subject matter jurisdiction in a partnership-level case.

distortion of income" but attempts to make a retroactive TMT out of any deficiency resulting from a "substantial distortion of income" for a taxpayer using the cash method of accounting. This is invalid because it is inconsistent with and in direct conflict with the statute which specifically refers to "any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period."

In short, these Tax Court decisions did not establish any TMT grounds for adjustment – even if the Court follows the law of the Circuits that hold lack of economic substance alone is sufficient to establish sham.

**d. The Forms 870-P(AD) Settled All Partnership Item Components of §6621(c)**

The partnership item component of a §6621(c) determination includes both tax items *and*, by regulation, the characterization of those items. The comprehensive nature of §6224(c) settlements also applies to partnership item characterizations. Otherwise the item is split from its character, allowing subsequent characterizations at odds with the prior adjustment, *e.g.*, here the Pratis' settlements allowed over half of the partnership item farming expenses and years after the resulting assessments were made the partnership-level agreed decisions, under the government's interpretation, inconsistently asserted the same farming expenses were sham transactions. Also, once a partnership item converts to a nonpartnership item there is no partnership item character left. There is only the character of the nonpartnership items. *Keener* failed to recognize this when it concluded it lacked jurisdiction over the partners' §6621(c) claims, relying on the content of the later agreed decisions addressing the bases for the disallowances in those decisions, and applying that purported characterization to the adjustments that were agreed to years earlier in the Keeners' Forms 870-P(AD) §6224(c) settlements.

### 3. <u>In the Alternative, the AMCOR Partners Request that Their 77 Cases Be Either Stayed Or Consolidated for Appeal</u>

Should the Court determine not to amend its prior opinion, then the plaintiffs request, in the alternative, that all 77 judgments be vacated and either (i) all 77 cases be stayed pending the Federal Circuit's resolution of the jurisdictional issues in *Keener*, or (ii) the other 76 cases[43] be consolidated under the case at bar, the judgments re-entered, and the cases proceed as a single appeal.

The government's brief in the *Keener* appeal is currently due on or before May 8, 2008. The Federal Circuit's determination as to this Court's jurisdiction to address the §6229(a) limitations issue and the §6621(c) penalty interest issue will be binding on all 77 cases in issue here. The Pratis' facts and the legal analysis in the *Prati* opinion do not expand or alter the issues already before the Federal Circuit in *Keener*. There is nothing to be gained by either the AMCOR partners, the government, or the courts by pursuing an appeal of the *Prati* opinion before the *Keener* appeal is resolved. Therefore, the AMCOR partners request that all 77 judgments be vacated and all 77 cases stayed pending the Federal Circuit's resolution of the *Keener* appeal. The partners believe this is the best approach to preserve the resources of all parties and the courts. Further this procedure would resolve an issue of fundamental unfairness. An underlying predicate of the *Prati* opinion is that the limitations issue is a partnership item that was not settled by the Pratis' partnership item settlement. This is a fact issue specific to each partner's individual settlement. While the partners maintain that their settlements are all substantively similar the judgments were entered before partners in the other 76 cases were allowed to submit their proof on that issue so that they could adequately pursue an individual appeal. The partners believe that individual appeals would waste the resources of the courts and the parties. But if the partners are forced to pursue 77 separate appeals then requiring the other 76 partners to proceed without being allowed to present their proof of facts is fundamentally

43 With the possible exceptions addressed in footnote 2.

unfair and unreasonable.

If the Court chooses not to stay all 77 cases pending the Federal Circuit's decision in *Keener* then the AMCOR partners request that the Court consolidate the other 76 cases[44] under the case at bar for purposes of appeal.

RCFC 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

These cases clearly fall within the parameters of cases where this Court recognizes that "consolidation is encouraged:"

> To determine whether consolidation of claims is appropriate, the court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. *Cienega Gardens v. U.S.,* 62 Fed.Cl. 28, 31 (2004) (citing *Karuk Tribe of Cal. v. U.S.,* 27 Fed.Cl. 429, 433 (1993)). Consolidation prevents separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts. *Karuk Tribe,* 27 Fed.Cl. at 433. The court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.1990). In making its determination, the court must consider:
>
>> [w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, …, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned ….
>
> *Id.* at 1285 (quoting *Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4th Cir.1982)). Where common questions of law or fact are involved and consolidation would avoid unnecessary costs, consolidation is encouraged. *Cienega Gardens,* 62 Fed.Cl. at 32 (citing *Johnson v. Mississippi Valley Barge Line Co.,* 34 F.R.D. 140, 142 (W.D.Pa.1963)). "Consolidation can be ordered despite opposition by the parties." *Id.* (citing *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.,* 712 F.2d 978, 989 (5th Cir.1983); *Midwest Cmty. Council, Inc. v. Chicago Park Dist.,* 98 F.R.D. 491, 500 (N.D.Ill.1983)). ….
>
> *d'Abrera v. U.S.*, 78 Fed.Cl. 51, 60 (2007).

---

[44] With the possible exceptions addressed in footnote 2.

Judicial economy would clearly be served and delay and possible confusion avoided by allowing the Federal Circuit to address one appeal instead of 77. Consolidation would preserve the resources of the partners and the government's appellate attorneys by allowing them to avoid preparing and filing 77 separate sets of briefs. Finally, consolidation would remedy any prejudice to those partners not allowed to present their individual fact evidence, and avoid unnecessary costs to both the partners and the government, including the requirement that the partners pay what is effectively a $34,650.00 appellate filing fee.

Therefore, if the Court chooses not to stay all 77 cases pending the outcome of the *Keener* appeal it should exercise its broad discretion to consolidate the other 76 cases under the case bar and allow all of the partners to proceed as a single appeal and the other partners to rely on the relevant facts and evidence presented by the Pratis.

WHEREFORE, the plaintiffs request that this motion be deemed as also filed in each of the 76 other cases listed in footnote 1 sufficient for all purposes, including tolling – until the date this motion is resolved – the FRAP 4(a) period for filing appeals in all 77 cases.

Plaintiffs also request that the Court reconsider its opinion and reverse its determination that the Court lacks jurisdiction in these cases to address the taxpayer-plaintiffs' claims for refund based on the statute of limitations and for tax motivated interest imposed under former 26 U.S.C. §6621(c). Should the Court reject that request then, in the alternative, plaintiffs request that all 77 judgments be vacated and either (i) all 77 cases be stayed pending resolution by the Federal Circuit of the jurisdictional issues in *Keener*, or (ii) the other 76 cases[45] be consolidated under the case at bar, the judgments then re-entered, and the cases proceed as a single appeal.

---

[45] With the possible exceptions addressed in footnote 2.

Respectfully,

/s/ Thomas E. Redding

Thomas E. Redding
Texas State Bar No. 16661300
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)
ATTORNEY FOR PLAINTIFFS

Of Counsel for Plaintiffs:
Teresa J. Womack
Texas State Bar No. 00788707
Sallie W. Gladney
Texas State Bar No. 00787546
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)